UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA OCAMPO,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No.  CV 05-452-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On January 20, 2005, Maria Ocampo ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits and supplemental security income. On March 21, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Stephen G. Larson. On August 12, 2005, defendant filed an Answer to Complaint. On October 3, 2005, the parties filed their Joint Stipulation.

On March 30, 2006, Chief Magistrate Judge Ralph Zarefsky vacated the Consent to Proceed Before United States Magistrate Judge Stephen G. Larson and referred the case to United States Magistrate Judge

Jennifer T. Lum.  On April 6, 2006 and April 17, 2006, the parties filed Consents to Proceed Before United States Magistrate Judge Jennifer T. Lum.

The matter is now ready for decision.

## BACKGROUND

On September 8, 2000, plaintiff filed an application for disability insurance benefits.  (Administrative Record ["AR"] at 67-69).  Plaintiff alleged that, beginning on August 22, 1999, she was unable to work because she suffered from depression, high blood pressure, and injuries to her left arm and shoulder resulting from a mastectomy.  (AR at 93).  The Commissioner denied plaintiff's application for benefits.  (AR at 53-59).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 60).  On January 7, 2002, the ALJ conducted a hearing in Downey, California.  (AR at 31-52).  Plaintiff appeared at the hearing with counsel and testified.  (Id.).  On March 29, 2002, the ALJ issued his decision denying benefits.  (AR at 15-20).  In his decision, the ALJ concluded that although plaintiff suffered from severe impairments, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (AR at 20).  The ALJ also found that plaintiff's complaints of totally disabling limitations were not fully credible.  (Id.).  The ALJ then determined that plaintiff was able to perform her past relevant work as a packer.  (Id.).  Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act.  (Id.).
///

2

Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 10). On August 20, 2002, the Appeals Council affirmed the ALJ's decision. (AR at 6-8). Plaintiff appealed the matter to the District Court. On July 16, 2003, the court remanded the case pursuant to a Stipulation of Remand into which the parties entered.[1] (AR at 482-83). On September 13, 2003, the Appeals Council issued an order instructing the ALJ to conduct a hearing, develop the record, and issue a new decision. (AR at 484-85).

On December 23, 2003, the ALJ conducted a hearing in Downey California in accordance with the Remand Order. (AR at 466-81). Plaintiff appeared with counsel and testified. (AR at 469-80). An interpreter was also present. (AR at 466). On April 23, 2004, the ALJ issued his decision denying benefits. (AR at 452-56). In his decision, the ALJ concluded that plaintiff suffered from severe impairments of chronic left shoulder pain, chronic right shoulder pain, hypertension, panic disorder, and depression. (AR at 455). The ALJ, however, determined that these impairment did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ found that, based upon plaintiff's residual functional capacity, plaintiff retained the capacity to perform her past relevant

///
///

work as a security guard. (Id.). Ultimately, the ALJ found that

---

[1] The Stipulation for Remand directed the ALJ to reassess plaintiff's subjective complaints of pain, address all the evidence provided by the lay witness, and assess plaintiff's physical and mental residual functional capacity in light of all the evidence in the record. (Joint Stipulation at 3-4).

1  plaintiff was not disabled pursuant to the Social Security Act.  (AR
2  at 455).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to consider all the medical evidence and all of plaintiff's physical impairments when assessing her residual functional capacity.

2. Substantial evidence does not exist to support the ALJ's finding that plaintiff's mental impairments did not prevent her from performing her past work.

3. The ALJ failed to fully consider plaintiff's testimony and third party reports and make proper findings of credibility.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible

of more than one rational interpretation, the ALJ's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

## **DISCUSSION**

**A.    The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. <u>Id.</u> at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. <u>Id.</u> at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. <u>Id.</u> at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Id.</u> If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Bowen</u>, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. <u>Id.</u> at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. <u>Id.</u>

**B.    Whether the ALJ Properly Found Plaintiff's Mental Impairments Did**

**Not Prevent Her From Performing Her Past Work**

Plaintiff challenges the ALJ's determination that she could perform simple, repetitive work with limited interaction with the general public. Plaintiff contends that this residual functional capacity assessment was not supported by the evidence in the record. Specifically, plaintiff points to the opinion of disability from a consultative examiner, treating records indicating serious complaints and diagnoses, and low Global Assessment of Functioning[2] ("GAF") scores.

Defendant responds that sufficient evidence supports the ALJ's findings regarding plaintiff's residual functional capacity. First, the ALJ properly relied on the opinions of the State Agency physicians that plaintiff could work. Second, treating records stated that plaintiff's depression was in full remission and that her symptoms were alleviated with treatment. Thus, defendant contends, substantial evidence supports the ALJ's findings that plaintiff's mental impairments did not impose functional limitations that would preclude her from performing her past relevant work.

**1.   Opinion of the Consultative Examiner**

First, plaintiff claims that the opinion of disability of a consultative examiner does not support the ALJ's determination that plaintiff is able to perform simple, repetitive work. On November 18, 2000, Khang Nguyen, M.D., performed a Complete Psychiatric Evaluation on plaintiff and diagnosed her with major depression, single episode, severe, without psychotic features. (AR at 263). Dr. Nguyen further

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

opined that plaintiff's condition was severe and persistent and that she was not able to "perform work-related duties and adapt to commonplace stressors of a work environment." (Id.).

Thereafter, three State Agency physicians examined her medical records and rendered opinions regarding her functional limitations. On December 21, 2000, Dr. P. Dumandan, opined that the medical evidence was too weak to support Dr. Nguyen's conclusions and that plaintiff was able to perform "at least simple work." (AR at 278). Another State Agency, Frank Williams, M.D., reviewed Dr. Dumandan's assessment and agreed with it. (AR at 279). On January 3, 2001, C. Stone, M.D., assessed moderate limitations in plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace. (AR at 280-93). Dr. Stone, however, also opined that, with psychiatric treatment, plaintiff's condition would be expected to be non-severe by November 2001. (AR at 292).

While the ALJ rejected Dr. Nguyen's opinion in favor of the opinions of Drs. Dumandan and Williams in his prior decision, he did not set forth any reasons for rejecting Dr. Nguyen's opinion in the decision on remand. In fact, the ALJ did not even reference Dr. Nguyen's opinion of disability in his second decision. In the decision on remand, the ALJ wrote, "The evaluation of the medical evidence contained in the decision of March 29, 2002 is incorporated herein by reference, but not the findings or conclusions obtained therefrom." (AR at 454). While Dr. Nguyen's opinion was incorporated by reference from the prior decision, the ALJ failed to state grounds for rejecting the opinion of disability.

Even if the ALJ rejected Dr. Nguyen's opinion in favor of a State Agency physician, he failed to provide specific and legitimate

reasons, supported by substantial evidence in the record, for doing so.  Generally, an ALJ should afford less weight to a non-examining physician's opinion than to an examining physician's opinion.  See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician.").  Standing alone, a non-examining physician's opinion cannot constitute substantial evidence to reject an examining physician's opinion.  See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.") (emphasis in original). In order to reject the testimony of an examining physician in favor of a non-examining physician, the ALJ must give specific, legitimate reasons that are supported by substantial evidence in the record.  Id. (quoting Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)).  Thus, even if the ALJ rejected Dr. Nguyen's opinion in favor of the State Agency physicians, he failed to offer specific and legitimate reasons, supported by substantial evidence in the record, for adopting the non-examining opinions of the medical experts.  Such omission constitutes reversible error.

**2.   GAF Scores**

Treating physicians examined plaintiff and assessed her with GAF scores ranging from 40 to 60.  On April 18, 2001, Lisa Remsing, M.D. diagnosed plaintiff with major depression and assessed her with a GAF

score of 40.[3]  (AR at 333).  On June 1, 2001, Dr. Remsing diagnosed plaintiff with major depression and anxiety, not otherwise specified. (AR at 321).  Dr. Remsing also assessed plaintiff with a GAF score of 45.[4]  (Id.).  Most recently, on January 2, 2003, Steven Calleros, M.D., diagnosed plaintiff with major depressive disorder, severe, recurrent and assessed her with a GAF score of 60.[5]  (AR at 664).

Here, the ALJ failed to address the low GAF scores assessed by plaintiff's treating physicians, much less give any reason to reject the scores.  The medical opinion of plaintiff's treating physicians, however, are entitled to special weight.  Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester v. Chatter, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chatter,

---

[3]  A GAF score between 31 to 40 indicates "[s]ome impairment in reality testing or communication ( e.g., speech is at times illogical, obscure, or irrelevant ) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood ( e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[4]  A GAF score between 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[5]  A GAF score between 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

94 F.3d 520 (9th Cir. 1996). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Reddick, 157 F.3d at 725. Here, the ALJ failed to even mentioned any of the treating physicians' GAF scores.

Although plaintiff's GAF scores improved with time, her highest score still indicated that she suffered from moderate symptoms or impairment. In his first decision, the ALJ noted the "GAF assessments indicative of seriously limiting symptoms," but did not specifically discount them. (AR at 18). The GAF scores were not mentioned at all in the Decision on Remand. Although GAF scores are not essential to evaluating the accuracy of a residual functional capacity assessment,[6] the ALJ still retains the duty to consider all the evidence. See, e.g., Purvis v. Comm'r, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (finding that while a GAF score cannot, by itself, require a finding of disability, disability determinations should be made on a case-by-case basis, considering all the evidence, including GAF scores). In the instant case, the Court finds that the ALJ did not properly consider the multiple low GAF scores, even though he described them in his first decision as "indicative of seriously limiting symptoms." (AR at 18). Such omission, in conjunction with the ALJ's failure to offer specific and legitimate reasons supported by substantial evidence for adopting the non-examining opinions of the medical experts, constitutes grounds for remand.

///

### 3. Depression and Panic Disorder

---

[6] Howard v. Comm'r, 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help.

Finally, the ALJ rejected plaintiff's claims of disability on the basis that plaintiff's depression was in full remission and that her panic disorder was controlled by medication. Specifically, the ALJ cited to treating notes that stated plaintiff suffered from major depressive disorder, recurrent, in full remission. (AR at 656, 657, 658, 660). The ALJ also noted that progress notes from January 4, 2002 through October 23, 2003 contained "little or no useful information apart from a record of various medications prescribed for [plaintiff's] physical and psychiatric symptoms..." (AR at 454). In the ALJ's prior decision, which he incorporated by reference, the ALJ cited the opinion of Dr. Dumandan, who opined that plaintiff was capable of simple work, and Dr. Stone, who opined that plaintiff was only moderately limited. (AR at 18). In so concluding that plaintiff could perform her past relevant work, however, the ALJ failed to properly evaluate the medical evidence in the record.

The ALJ improperly rejected plaintiff's disability claims on the ground that plaintiff's panic disorder was controlled by medication. (AR at 454). On the contrary, the medical records provide support for plaintiff's claims of disability, namely that she continues to suffer from disabling panic attacks. While her treating physicians most recently diagnosed her with major depressive disorder, recurrent, in full remission, they also consistently noted that she suffers from panic disorder. (AR at 655-56, 657, 658, 660, 662-63, 666, 669, 671. 674, 677, 678, 679, 680, 682). In the most recent progress note dated October 21, 2003, plaintiff complained of the resumption of her panic attacks and her difficulty in sleeping at night out of fear of the manifestation of its physical symptoms, including paresthesias, cold sensation in her hands, and tightness in her chest lasting at least 40

1  minutes. (AR at 655). Plaintiff reported that the attacks occur once
2  a day and, at times, every other day. (Id.). The notes of Francisco
3  Velarde, M.D., and Isabel Lagomasino, M.D., state that they would try
4  different medications in an attempt to control her panic disorders.
5  (Id.). The physicians did not state or suggest that plaintiff's panic
6  disorders were under control. Thus, the Court finds that the ALJ's
7  statement that plaintiff's "panic disorder has been controlled for the
8  most part with medications" was inaccurate. Plaintiff's physicians
9  have consistently diagnosed her with panic disorder, which appeared to
10 worsen in the most recent progress note. As such, the ALJ's reasoning
11 in support of his assessment of plaintiff's mental residual functional
12 capacity lacks substantial evidence.
13     Accordingly, in light of the foregoing, the Court concludes that
14 substantial evidence does not support the ALJ's conclusion that
15 plaintiff could perform her past work as a security guard.

**C.   Reversal and Remand is Appropriate**

17     The choice whether to reverse and remand for further
18 administrative proceedings, or to reverse and simply award benefits,
19 is within the discretion of the Court. McAlister v. Sullivan, 888
20 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional
21 proceedings would remedy defects in the ALJ's decision, and where the
22 record should be developed more fully. Id; see also Rodriguez v.
23 Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d
24 172, 176 (9th Cir. 1990). An award of benefits is appropriate where
25 no useful purpose would be served by further administrative
26 proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir.
27 1995), where the record has been fully developed, see Schneider v.
28 Commissioner of the Social Security Administration, 223 F.3d 968, 976

(9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must reexamine the medical record with respect to plaintiff's mental impairment to determine whether she retains the residual functional capacity to return to her past work as a security guard.[7]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: May 19, 2006

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[7] In the Joint Stipulation, plaintiff also claims that the ALJ failed to consider all the medical evidence and all of her physical impairments when assessing her residual functional capacity and that he also failed to fully consider plaintiff's testimony and third party reports and make proper findings of credibility. As explained above, however, the ALJ's failure to properly evaluate the medical evidence with respect to plaintiff's mental impairment constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.